1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                        San Francisco Division

11   LABORERS INTERNATIONAL UNION          Case No. 22-cv-02215-LB
     LOCAL 261, et al.,
12
                    Plaintiffs,            **ORDER GRANTING IN PART AND**
13                                         **DENYING IN PART THE**
           v.                              **DEFENDANT'S MOTION TO DISMISS**
14
                                           Re: ECF No. 13
     CITY AND COUNTY OF SAN
15   FRANCISCO,

16                  Defendant.

17

18                            **INTRODUCTION**

19        The plaintiffs, a union (Local 261) and two of its members, sued the City and County of San

20   Francisco (CCSF) for discrimination and retaliation under state and federal law.[1] Local 261 claims

21   that the CCSF retaliated against Local 261 for complaining about unsafe and unsanitary working

22   conditions for female union members (and CCSF employees) (count one) and for complaining

23   about public corruption and unsanitary working conditions (count two), in violation of 42 U.S.C. §

24   1983. The plaintiffs collectively claim retaliation based on complaints about workplace safety,

25   also in violation of § 1983 (count three). The plaintiffs also claim that the retaliation violates

26

27   _____

     [1] First Am. Compl. (FAC) – ECF No. 1 at 66–75 (¶¶ 103–146). Citations refer to material in the
28   Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of
     documents.

     ORDER – No. 22-cv-02215-LB

California Labor Code § 1102.5 (count four) and the Meyer-Milias-Brown Act, California Government Code § 3502.1, because it punishes union members for exercising their union rights (count five). In counts four and five, the plaintiffs also complain that the named plaintiffs suffered adverse employment actions.[2]

The CCSF moved to dismiss counts one and two under Federal Rule of Civil Procedure 12(b)(1) on the ground that Local 261 lacks standing to assert these claims.[3] It moved to dismiss counts three (only as to Local 261) and count five (for all plaintiffs) under Rule 12(b)(6) on the grounds that (1) Local 261 cannot assert a claim under Labor Code § 1102.5 because the union is not an "employee" (count three) and (2) there is no private right of action under the Meyers-Milias-Brown Act (count five).[4]

Local 261 has organizational standing because the CCSF's conduct allegedly forced it to divert resources away from its mission. Local 261 also has associational standing on behalf of its members but only to seek injunctive and declaratory relief. It does not have associational standing to seek money damages because establishing damages would depend on individualized proof unique to each union member. Regarding the state-law claims, Local 261 cannot maintain a claim under § 1102.5 because it is not an employee. The plaintiffs' Meyers-Milias-Brown Act claim fails because the plaintiffs have not alleged facts plausibly establishing that it exhausted its administrative remedies.

## STATEMENT

The plaintiffs in this case are Local 261 and two members of Local 261, Theresa Foglio-Ramirez and Juan Rivera. Ms. Foglio-Ramirez and Mr. Rivera are, respectively, employed by the San Francisco Department of Public Works and the San Francisco Park and Recreation Department.[5] Local 261 brought this suit as a representative of union members who work at the

United States District Court
Northern District of California

---

[2] *Id.* at 66–69 (¶¶ 103–119).

[3] Mot. – ECF No. 13 at 4.

[4] *Id.* at 6–7.

[5] FAC – ECF No. 1 at 42–43 (¶¶ 9–10).

Department of Public Works and the San Francisco Public Utilities Commission.[6] The Department of Public Works operates under the City Administrator's Office and has approximately 1,600 employees and a $400 million budget.[7] The San Francisco Public Utilities Commission operates wastewater and water systems in the City and County of San Francisco and three Bay Area counties, employs permanent staff in maintenance and gardening classifications, and awards contracts for work on its systems.[8]

In 2004, the CCSF and Local 261 began collaborating on a workforce-development program that involved replacing some higher-wage positions with a greater number of lower-wage positions.[9] The program was designed to (1) prevent homelessness by providing entry-level employment opportunities and (2) "provide Black residents of San Francisco with quality union jobs."[10] To support this effort, the CCSF (through the Department of Parks and Recreation) and Local 261 jointly administered an apprenticeship program, which included a pre-apprenticeship component.[11] Those in the apprenticeship program were employed under specific employee classifications (7510 or 9916).[12] The 7501 classification was a new classification for employees that Local 261 and the Department of Public Works created.[13] The 9916 classification was apparently for apprentice-level positions at the San Francisco Public Utilities Commission.[14]

The plaintiffs allege that the San Francisco Public Utilities Commission failed to adequately implement the workforce-development program.[15] In 2018, Local 261 began investigating this

United States District Court
Northern District of California

---

[6] *Id.* at 42–43, 48 (¶¶ 8–9, 14, 31).

[7] *Id.* at 43–44 (¶ 15).

[8] *Id.* at 42–43, 48 (¶¶ 8, 14, 31).

[9] *Id.* at 46 (¶ 26).

[10] *Id.* at 47, 52 (¶¶ 25, 41).

[11] *Id.* at 47 (¶ 28).

[12] *Id.* at 50 (¶ 36).

[13] *Id.* at 47 (¶ 27). The FAC also refers to a 7510 classification (*see id.* at 50 (¶ 36), but this appears to be an erroneous reference to the 7501 classification.

[14] *Id.* at 50 (¶ 38).

[15] *Id.* at 49 (¶ 35).

alleged failure.[16] For instance, Local 261 requested records from the CCSF concerning the "Pre-Apprenticeship Training Program at Gleneagles Golf Course" and the "Sheriff's Department Horticultural Training Program."[17]

According to the complaint, Local 261 discovered corruption that involved (1) "hiring of individuals in the 9916 and 7501 classifications who were not actually working and training in the workforce development programs at the [San Francisco Public Utilities Commission] and [San Francisco Department of Public Works]" and (2) "the award of public funds to favored nonprofits to perform the same duties as employees in the 9916 and 7501 classifications."[18] Local 261 also alleges that the SFPUC and DPW were attempting to evade minimum labor standards that were set out in a memorandum of understanding between the union and the CCSF.[19] Essentially, the plaintiffs allege that the CCSF engaged in so-called "granting out" corruption by using nonprofits to perform work that Local 261 members would otherwise have performed.[20]

To address the purported corruption, Local 261 relied on its business representatives (also referred to as business agents) who negotiate with the CCSF about contracts and administrative matters.[21] In early 2019, Vince Courtney, who was Local 261's business representative and the Commissioner of the San Francisco Public Utilities Commission, filed a Whistleblower Complaint alleging corruption at the Commission.[22] Mr. Courtney resigned from the Commission shortly after filing the complaint.[23] Another Local 261 business representative, plaintiff Theresa Foglio-Ramirez, continued to pursue the alleged corruption in his place.

---

[16] *Id.* at 50–51 (¶¶ 36–38).

[17] *Id.* at 50 (¶ 37).

[18] *Id.* at 51 (¶ 39).

[19] *Id.* at 51 (¶ 40).

[20] *Id.* at 50–52 (¶¶ 38, 40–41).

[21] *Id.* at 47 (¶ 26).

[22] *Id.* at 52 (¶ 42).

[23] *Id.* at 49, 52 (¶ 35, 42).

Ms. Foglio-Ramirez protested the Commission's "Southeast Training proposal at 1550 Evans Street" and sought to share Local 261's document requests with members of the Commission.[24] Ms. Foglio-Ramirez also raised the alleged corruption with the San Francisco Sherriff's Department, Mayor Breed, and the Commission.[25]

Additionally, Ms. Foglio-Ramirez complained about unsafe working conditions, including the CCSF's alleged failure to provide access to sanitary restrooms, handwashing facilities, and personal protective equipment. She publicized her concerns to the media and on social media.[26] The lack of access to restrooms and sanitation facilities allegedly had a disproportionate impact on female employees.[27] Ms. Foglio-Ramirez raised the issues with CCSF supervisors, and Local 261 filed a complaint with Cal/OSHA.[28] In response, city officials allegedly threatened to terminate Ms. Foglio-Ramirez, reduce the wages of all Local 261 members, and "destroy Local 261."[29]

The plaintiffs also allege that the CCSF retaliated against plaintiff Juan Rivera, Local 261's Chief Steward at the Department of Public Works, because of disagreements between Local 261 and the Department.[30] The plaintiffs allege that the Department demoted Mr. Rivera, declined to select him for a position coordinating pre-apprenticeship employees, and took away his "master key" (presumably a master key to Department of Public Works' facilities).[31] The plaintiffs allege that the assistant to the Department's deputy director told Mr. Rivera that his demotion was "because of your union."[32]

Local 261 asserts six claims against the CCSF: (1) gender discrimination in violation of the First and Fourteenth Amendments under § 1983 (Local 261 against the CCSF); (2) retaliation for

---

[24] *Id.* at 53–54 (¶¶ 48, 56).

[25] *Id.* at 52 (¶¶ 43, 44).

[26] *Id.* at 55–57, 59 (¶¶ 58, 62–64, 72).

[27] *Id.* at 56–57 (¶¶ 62, 66).

[28] *Id.* at 59 (¶¶ 73, 77).

[29] *Id.* at 55, 59–60 (¶¶ 58, 78).

[30] *Id.* at 63 (¶ 92).

[31] *Id.* at 54, 63–64 (¶¶ 54, 92–95).

[32] *Id.* at 64 (¶ 95).

whistleblowing in violation of the First and Fourteenth Amendments under § 1983 (Local 261 against the CCSF); (3) retaliation for workplace safety complaints in violation of the First and Fourteenth Amendments under § 1983 (Local 261 and individual plaintiffs against the CCSF); (4) retaliation in violation of Cal. Labor Code § 1102.5 (Local 261 and individual plaintiffs against the CCSF); (5) retaliation in violation of the Meyers-Milias-Brown Act, Cal. Gov't Code § 3502.1 for union organizing activities (Local 261 and individual plaintiffs against the CCSF); and (6) declaratory judgment for the use of CCSF-owned restrooms (Local 261 against the CCSF).[33]

The CCSF moved to dismiss Local 261's § 1983 claims for gender discrimination and whistleblowing retaliation (claims one and two) under Rule 12(b)(1) on the ground that Local 261 does not have standing to assert those claims.[34] The CCSF moved to dismiss claims four and five under Rule 12(b)(6): (1) Local 261's § 1102.5 claim (claim four) on the ground that only "employees" (and not a union) can sue under that section, and (2) the Meyers-Milias-Brown Act claim (claim five) on the ground that there is no private right of action under the Act.[35]

The parties consented to magistrate-judge jurisdiction.[36] The court held a hearing on the motions to dismiss on June 30, 2022.

## ANALYSIS

### 1.  Legal Standards

#### 1.1    Rule 12(b)(1)

A complaint must contain a short and plain statement of the grounds for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

---

[33] *Id.* at 66–75 (¶¶ 103–146).

[34] Mot. – ECF No. 13 at 4–6.

[35] *Id.* at 6–7.

[36] Consents – ECF Nos. 10, 11.

United States District Court
Northern District of California

1    A defendant's Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227 F.3d

2  1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves

3  insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations,

4  though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*,

5  750 F.3d 776, 780, n.3 (9th Cir. 2014). This is a facial attack.[37] The court thus "accept[s] all

6  allegations of fact in the complaint as true and construe[s] them in the light most favorable to the

7  plaintiffs." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

8    Standing pertains to the court's subject-matter jurisdiction and thus is properly raised in a Rule

9  12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22

10  (9th Cir. 2010).

11    **1.2    Rule 12(b)(6)**

12    A complaint must contain a "short and plain statement of the claim showing that the pleader is

13  entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

14  which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

15  A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the

16  'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

17  recitation of the elements of a cause of action will not do. Factual allegations must be enough to

18  raise a claim for relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).

19    To survive a motion to dismiss, a complaint must contain sufficient factual allegations,

20  accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S.

21  662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual

22  content that allows the court to draw the reasonable inference that the defendant is liable for the

23  misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it

24  asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

25

26

27

28

---

[37] Mot. – ECF No. 13 at 2 ("But even at face value, several of Plaintiffs' claims suffer from significant jurisdictional and legal defects.").

1   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

2   short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

3       If a court dismisses a complaint, it should give leave to amend unless "the pleading could not

4   possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

5   *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

6

7   **2.   Standing**

8       Federal-court jurisdiction extends only to "cases" and "controversies." *Raines v. Byrd*, 521

9   U.S. 811, 818 (1997). "Standing to sue is a doctrine rooted in the traditional understanding of a

10  case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

11      To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly

12  traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

13  favorable judicial decision." *Id.*

14      An association has standing to sue on behalf of its members when "[(1)] its members would

15  otherwise have standing to sue in their own right, [(2)] the interests at stake are germane to the

16  organization's purpose, and [(3)] neither the claim asserted nor the relief requested requires the

17  participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't.*

18  *Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). As the party invoking the court's jurisdiction, the

19  plaintiff has the burden of establishing standing. *Spokeo*, 136 S. Ct. at 1547.

20      The issue here is whether Local 261 has Article III standing, either organizational (or direct)

21  standing based on a diversion-of-resources theory or associational standing based on injury to its

22  members.

23  **2.1   Direct or Organizational Standing**

24      An organization has "direct standing to sue" when it shows "a drain on its resources from both

25  a diversion of its resources and frustration of its mission." *Fair Hous. of San Fernando Valley v.*

26  *Roommate.com*, 666 F.3d 1216, 1219 (9th Cir. 2012). The organization's "standing must be

27  established independent of the lawsuit filed by the plaintiff." *Id.* "An organization cannot

28  manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a

United States District Court
Northern District of California

United States District Court
Northern District of California

1    problem that otherwise would not affect the organization at all." *Valle del Sol Inc. v. Whiting*, 732

2    F.3d 1006, 1018 (9th Cir. 2013) (cleaned up).

3        The CCSF argues that Local 261 does not have direct standing because the lack of bathroom

4    access and the alleged withholding of public records did not directly injure the union.[38] The CCSF

5    also asserts that Local 261 lacks standing because the alleged retaliation and harassment was

6    directed at union members, not the union itself.[39] Relying on *Havens Realty Corp. v. Coleman*,

7    455 U.S. 363 (1982), Local 261 contends that it "suffered as an organization because its leaders

8    were targeted for retaliation" and had to devote resources to defending its members before filing

9    this lawsuit.[40]

10       Local 261 carried its burden to establish standing. First, the CCSF's contention — that "no

11   court has ever applied [the holding from *Havens Realty*] to a labor union" — is incorrect.[41]

12   Several federal courts, including the Ninth Circuit, have applied reasoning from *Havens* to labor

13   unions. For instance, in *American Federation of Government Employees Local 1 v. Stone,* the

14   court stated that "the Supreme Court has held, actions that 'perceptibly impair' an organization's

15   ability to carry out its mission impose a 'concrete and demonstrable' injury in fact." 502 F.3d

16   1027, 1032–33 (9th Cir. 2007) (cleaned up) (quoting *Havens Realty Corp.*, 455 U.S. at 379). Then,

17   in the next sentence, the Ninth Circuit held that "an increased difficulty in recruiting union

18   members qualifies as a 'concrete and demonstrable' injury." *Id.* at 1033; *see, e.g.*, *Transp.*

19   *Workers Union of Am., Loc. 100, AFL-CIO v. N.Y.C. Transit Auth.*, 342 F. Supp. 2d 160, 167 &

20   n.37 (S.D.N.Y. 2004) (holding that Article III standing "requirements apply equally to

21   organizations – such as labor unions – as to natural persons" and that union plaintiffs "have

22   alleged a concrete harm that is causally linked to the [defendant's] sick leave policy" based on the

23   diversion of resources) (citing *Havens Realty*, 455 U.S. at 379 n.19).

24

25   _____

26   [38] *Id.* at 5.

     [39] *Id.*

27   [40] Opp'n – ECF No. 17 at 8–10.

28   [41] Reply – ECF No 18 at 3.

Second, the allegations in the complaint establish that Local 261 sustained an injury-in-fact. Local 261 alleges that it diverted resources to (1) pay attorney's fees for complaints to the CCSF and Cal/OSHA, (2) defend Mr. Courtney against a conflict-of-interest charge, (3) investigate corruption, and (4) arrange for personal protective equipment and restroom access for its members.[42] Local 261 also cites the attorney's fees it incurred "to investigate and prosecute this action."[43] While the costs of litigation alone are insufficient to establish standing (*Valle del Sol Inc.*, 732 F.3d at 1018), the diversion of Local 261's resources to address other problems (investigating alleged corruption and restroom access) and away from its mission are sufficient to establish direct standing. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 765 (9th Cir. 2018) (organizations can establish standing by showing that, "independent of the litigation, the challenged policy frustrates the organization's goals and requires the organization to expend resources in representing clients they otherwise would spend in other ways") (cleaned up).

The CCSF's motion to dismiss claims one and two for lack of organizational standing is denied.

### 2.2   Associational Standing

"The doctrine of associational standing permits an organization to 'sue to redress its members' injuries, even without a showing of injury to the association itself.'" *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (quoting *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996)). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

---

[42] FAC – ECF No. 1 at 53, 64–65 (¶¶ 47, 99).

[43] *Id.*

United States District Court
Northern District of California

1    The parties do not dispute that Local 261 has satisfied the first two prongs of the *Hunt* test.[44]

2    Local 261's members have standing to pursue claims in their own right, and this action seeks to

3    protect interests that relate to the union's purpose. The CCSF contends that Local 261 cannot

4    satisfy the third prong of the test because it seeks monetary damages and the calculation of

5    monetary damages would require the participation of individual union members.[45]

6        The third prong of the *Hunt* test is a prudential, rather than constitutional, standing requirement.

7    *Mink*, 322 F.3d at 1109 and 1113; *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 951 n.9

8    (9th Cir. 2002) ("[T]he third factor [from *Hunt*] is 'merely prudential,' and designed to promote

9    efficiency in adjudication") (cleaned up). In general, the third prong is satisfied when the plaintiff

10   organization seeks declaratory or injunctive relief because the organization's "members need not

11   participate directly in the litigation" to obtain declaratory relief. *Alaska Fish & Wildlife Fed'n &*

12   *Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987).

13       For example, even if individualized inquiries are necessary to apply declaratory relief to an

14   organization's members, those inquiries occur outside of the litigation, and the court is not required

15   to make individualized inquiries when awarding equitable relief. *Santiago v. City of Los Angeles*,

16   No. CV 15-08444-BRO (Ex), 2016 WL 7176694, at *6 (C.D. Cal. Nov. 17, 2016). But when an

17   organization demands monetary damages, the claim "necessarily involve[s] individualized proof"

18   and does not satisfy the third prong of the *Hunt* test. *United Union of Roofers, Waterproofers, &*

19   *Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990).

20       In this case, Local 261 sought monetary damages for claims one and two.[46] Local 261 also

21   included a general demand for injunctive relief in the prayer at the end of its complaint.[47] When an

22   organizational plaintiff seeks both monetary and injunctive relief based on associational standing,

23   courts in this district have permitted the claim for injunctive relief to proceed but dismissed

24   damages claims because the equitable relief claim "would not require the participation of

25

26   ───────────────

     [44] Opp'n – ECF No. 17 at 10–12; Reply – ECF No. 18 at 4.

     [45] Mot. – ECF No. 13 at 5–6.

27   [46] FAC – ECF No. 1 at 67, 69 (¶¶ 109, 118)

28   [47] *Id.* at 75.

1  individual members." *Comm. for Immigrant Rts. of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F.

2  Supp. 2d 1177, 1194 (N.D. Cal. 2009). The same reasoning applies here. Local 261 can pursue

3  injunctive relief without the participation of its members because individualized proof is not

4  required for such relief.

5      The union cannot, however, pursue monetary damages without individualized proof. There is

6  no controlling or persuasive authority that would permit Local 261 to maintain associational

7  standing to seek monetary damages in this case. To the extent Local 261 relies on *Ass'n for Los*

8  *Angeles Deputy Sheriffs v. Macias*, the holding from that case is not persuasive because the facts

9  were meaningfully different. 63 Cal. App. 5th 1007, 1020 (2021), *review denied* (July 28, 2021).

10      In *Macias*, the court applied the *Hunt* test and held that the plaintiff organization satisfied the

11  third prong because it proved monetary damages at trial based on expert testimony without

12  individualized proof. *Id.* at 1019–24. The organization's ability to prove damages without the

13  participation of individual members hinged on the fact that the monetary damages arose from the

14  delayed implementation of a new memorandum of understanding with Los Angeles County. *Id.* at

15  1011–12. Therefore, the plaintiff's expert simply calculated damages based on the differences

16  between the salaries set by the old and new memorandums and the length of the delay. *Id.* at 1019.

17  Here, the CCSF's alleged conduct affected each Local 261 member in different ways. For

18  example, the complaint references (1) specific instances of retaliation against certain employees,

19  (2) the impact of the lack of personal-protective equipment on certain job classifications, and (3)

20  the effects of the lack of restroom access on certain employees (*i.e.*, Department of Public Works

21  employees in the field and female employees).[48] Establishing damages based on these facts likely

22  will require individualized proof based on the experience of individual members of Local 261.

23  Thus, the union has not satisfied the third prong of the *Hunt* test.

24      The CCSF's motion to dismiss claims one and two for lack of associational standing is denied

25  in part and granted in part. Local 261 has established associational standing for claims one and

26

27

---

[48] *Id.* at 56–57, 63 (¶¶ 60, 65–66, 92–94).

United States District Court
Northern District of California

1    two to the extent it seeks declaratory and injunctive relief. But Local 261 does not have

2    associational standing to pursue claims for monetary damages on these claims.

3

4    **3.  California Labor Code § 1102.5**

5         Section 1102.5 is a whistleblower statute. It provides, in pertinent part, that "[a]n employer, or

6    any person acting on behalf of the employer, shall not retaliate against an employee for disclosing

7    information . . . if the employee has reasonable cause to believe that the information discloses a

8    violation of state or federal statute, or a violation of or noncompliance with a local, state, or

9    federal rule or regulation[.]" Cal. Lab. Code § 1102.5(b). The CCSF contends that Local 261

10   cannot maintain this action because it is not an "employee" for purposes of § 1102.5(b).[49]

11        Section 1102.5 does not define terms "employee" or "employer." But courts have relied on the

12   meaning of the terms "employee" and "employer" under California's Fair Employment and

13   Housing Act (FEHA) when evaluating § 1102.5 claims. *Jana Preciutti v. Anthem Blue Cross of*

14   *Cal.*, No. LA CV20-03530 (JAK) (PVCx), 2020 WL 7646379, at *5 (C.D. Cal. Dec. 23, 2020)

15   (relying on the definition of "employee" under FEHA); *Minor v. Fedex Off. & Print Servs., Inc.*,

16   182 F. Supp. 3d 966, 989 (N.D. Cal. 2016) (relying on the definition of "employer" under FEHA).

17   In this regard, the California "agency charged with interpreting the FEHA has promulgated a

18   regulation that defines an 'employee' as '[a]ny individual under the direction and control of an

19   employer under any appointment or contract of hire or apprenticeship, express or implied, oral or

20   written.'" *Preciutti*, 2020 WL 7646379, at *5 (citing Cal. Code of Regs., tit. 2, § 11008(c)).

21        Notwithstanding the applicable definitions of "employee" and "employer," the existence of an

22   employee-employer relationship is a prerequisite to § 1102.5(b) liability. *Preciutti*, 2020 WL

23   7646379, at *5 ("The state whistleblower statute [§ 1102.5] also predicates potential liability on an

24   employer-employee relationship.") (citing *Hansen v. Cal. Dep't of Corr. & Rehab.*, 171 Cal. App.

25   4th 1537, 1546 (2008)). In this regard, courts have dismissed claims where the defendant was not

26

27

28   ――――――――――――――
     [49] Mot. – ECF No. 13 at 6.

United States District Court
Northern District of California

1  an "employer." *See*, *e.g.*, *Minor*, 182 F. Supp. 3d at 989 (holding that "§ 1102.5 claims may only

2  be brought against 'an employer'").

3         Local 261 does not fit the definition of an "employee" and there are no facts in the complaint

4  that would allow the court to plausibly infer an employee-employer relationship between Local

5  261 and the CCSF. Although neither party identified any case directly supporting their respective

6  positions, the cases where courts have dismissed claims because the defendant was not an

7  "employer" support the CCSF's theory. *Id.*

8         Furthermore, the California Supreme Court has held that labor unions do not have standing to

9  bring claims under the Labor Code Private Attorneys General Act of 2004. *Amalgamated Transit*

10 *Union, Loc. 1756, AFL-CIO v. Super. Ct.*, 46 Cal. 4th 993, 1003–05 (2009). The court reasoned

11 that the Act permitted only "an 'aggrieved employee' . . . to bring an action 'on behalf of himself

12 or herself and other current or former employees,'" and unions were "not employees of

13 defendants." *Id.* at 1003, 1005. The court held that unions could not rely on either an assignment

14 or associational standing theory to maintain claims on behalf of their members. *Id.* at 1003–05.

15 While not precisely analogous, the *Amalgamated* decision supports the CCSF's contention that

16 Local 261 cannot maintain a claim under § 1102.5(b) claim because it is not an employee.

17        Given the weight of the existing case law, Local 261's claim under § 1102.5(b) is dismissed

18 with prejudice.

19

20 **4.  Meyers-Milias-Brown Act**

21        The CCSF moved to dismiss the plaintiffs' claim under the Meyers-Milias-Brown Act on the

22 ground that the Act does not provide for a private right of action.[50] The Act, which was enacted in

23 1968, authorizes public entities to confer with and enter binding agreements regarding wages,

24 hours, and working conditions with labor organizations. *City of San Jose v. Operating Eng'rs Loc.*

25 *Union No. 3*, 49 Cal. 4th 597, 603 (2010) (citing Cal. Gov't Code §§ 3500–3510). After the

26

27

28 <hr>
[50] *Id.* at 7.

United States District Court
Northern District of California

1    passage of the Act, the California legislature created the California Public Employment Relations

2    Board. *Id.* at 603–04.

3        In 1994, the California Supreme Court held that an employee association had a right to enforce

4    rights under the Meyers-Milias-Brown Act by bringing a traditional writ of mandamus under

5    California Code of Civil Procedures § 1085. *Santa Clara Cnty. Couns. Attys. Assn. v. Woodside*, 7

6    Cal. 4th 525, 539 (1994) ("[T]he County's assertion that the [Meyers-Milias-Brown Act] contains

7    no express right to sue is irrelevant. The Legislature, in order to create a right to sue under the

8    [Meyers-Milias-Brown Act], need not have included language concerning the right to sue within

9    the act itself."). "Effective July 1, 2001, however, the Legislature vested the California Public

10   Employment Relations Board (PERB) with exclusive jurisdiction over alleged violations of the

11   [Meyers-Milias-Brown Act]." *Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub.*

12   *Emp. Rels. Bd.*, 35 Cal. 4th 1072, 1077 (2005). The Board's jurisdiction over Meyers-Milias-

13   Brown Act claims is subject to certain exceptions for "peace officers, management employees, the

14   City of Los Angeles, and the County of Los Angeles." *Id.* at 1077 n.1 (citing Cal. Gov't Code §§

15   3509(d)–(e), 3511).

16       Aside from the reference to the Board's "exclusive jurisdiction" in *Coachella Valley Mosquito*,

17   neither party cited cases directly addressing whether there is a private right of action under the

18   current version of the Act.[51] It appears that the only cases addressing the issue are from the

19   Southern District of California, where courts have split on the issue.

20       In *Bielma v. Bostic*, the court declined to hold that there was no private right of action under

21   the Meyers-Milias-Brown Act. No. 15cv1606-MMA (BLM), 2016 WL 29624, at *15 (S.D. Cal.

22   Jan. 4, 2016) ("Defendants argue there is no private right of action under the [Meyers-Milias-

23   Brown Act]. The Court finds no authority for such a position."). The *Bielma* court also reasoned

24   that because there are exceptions to the Board's jurisdiction, it did not make sense to limit judicial

25   review to writ petitions given that some categories of claimants "need not—and cannot—obtain a

26   final decision from [the Board]." *Id.*

27

28   [51] *Id.*; Opp'n – ECF No. 17 at 15–16.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On the other hand, in *Uriarte v. Bostic*, the court held that the plaintiff had not established a private right of action under the Act. No. 15cv1606-MMA (PCL), 2017 WL 2312084, at *8 (S.D. Cal. May 26, 2017) ("In the absence of persuasive legal authority or argument, Plaintiffs have not satisfied their burden of establishing that the [Meyers-Milias-Brown Act] provides a private right to sue for damages."); *see also Aaron v. Aguirre*, No. 06-CV-1451-H (POR), 2007 WL 959083, at *8 (S.D. Cal. Mar. 8, 2007) (no private right of action for "violation of public policy set forth in the [Meyers-Milias-Brown Act]").

Courts in the Northern District have not directly addressed the issue. One court dismissed a Meyers-Milias-Brown Act claim without prejudice after holding that the claim was not ripe because the alleged harm was "contingent on future events." *Contra Costa Cnty. Deputy Sheriffs Ass'n v. Mitchoff*, No. 15-CV-00261-TEH, 2015 WL 1322577, at *8 (N.D. Cal. Mar. 24, 2015). The implications of this result are unclear because the court never addressed whether a private action is possible under the Act, but it does hint that such claims may be possible.

The decision in *Lanzillo v. City of Riverside* provides some clarity. In that case, the court dismissed a claim under the Meyers-Milias-Brown Act after holding that plaintiffs may file such claims only after first filing a claim with the Board and exhausting administrative remedies. No. CV 10-34090-CAS(DTBx), 2010 WL 3171064, at *4 (C.D. Cal. Aug. 6, 2010). The *Lanzillo* court based its holding in part on *Coachella Valley*, where the court held that the plaintiff was excused from exhausting administrative remedies with the Public Employment Relations Board before filing a writ petition because the action raised issues of broad public importance. *Id.* Absent from the analysis in *Lanzillo* is any suggestion that the plaintiffs could not maintain an action in court under the Meyers-Milias-Brown Act after exhausting their administrative remedies. In sum, the weight of the existing case law supports the position that there is a private right of action under the Meyers-Milias-Brown Act but that plaintiffs must first exhaust administrative remedies.

The complaint included a single conclusory allegation of administrative exhaustion. This fails to plausibly establish either administrative exhaustion or an excuse from the administrative

exhaustion requirement.[52] The plaintiffs simply state in their Opposition that they "will suffer irreparable harm: inability to sanitize themselves and perform their duties free of harassment and retaliation."[53] The plaintiffs may eventually be able to plead exhaustion or an excuse from the exhaustion requirements, but the plaintiffs have not yet done so.

The plaintiffs have not identified any specific alleged facts or legal authority establishing exhaustion or an excuse from the exhaustion requirement. *See Coachella Valley*, 35 Cal. 4th at 1082 ("[T]he District did not show that it would suffer any unusual or irreparable injury if it were required to litigate the CSEA's unfair practices charge to completion before obtaining a judicial resolution of the jurisdictional limitations issues."); *City & Cnty. of San Francisco v. Int'l Union of Operating Eng'rs, Loc. 39*, 151 Cal. App. 4th 938, 948 (2007) ("[T]his exception [irreparable injury] to the exhaustion rule has been applied rarely and only in the clearest of cases."); *Omaha Indem. Co. v. Superior Ct.*, 209 Cal. App. 3d 1266, 1274 (Ct. App. 1989) ("[T]he failure to order severance [of two lawsuits] would not meet the definition of an 'irreparable injury.' It would constitute, at best, an 'irreparable inconvenience.'").

The CCSF also points out that Local 261 has an administrative complaint pending before the Public Employment Relations Board under case number SF-CE-1818-M and that a hearing is set for September 6, 2022.[54] The court takes judicial notice that, according to the Board's website, hearings under this case number are set for September 6 and 7, 2022.[55] Cal. Pub. Emp. Rels. Bd., https://eperb-portal.ecourt.com/public-portal/?q=node/371 (Results of Search for Case Number: "SF-CE-1818-M"). This too supports the CCSF's argument that the plaintiffs have not exhausted their administrative remedies. *Lanzillo*, 2010 WL 3171064, at *4 ("[T]he Court concludes that plaintiff must apply to the Public Employment Relations Board for relief before he may bring a

---

[52] FAC – ECF No. 1 at 43 (¶ 13).

[53] Opp'n – ECF No. 17 at 16.

[54] Reply – ECF No. 18 at 6 n.3.

[55] *Callan v. N.Y. Cmty. Bank*, 643 F. App'x 666 (9th Cir. 2016) ("The district court did not abuse its discretion in sua sponte taking judicial notice[.]") (citing Fed. R. Evid. 201(c), (d)); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'"); *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) ("A court may also take judicial notice of 'records and reports of administrative bodies.'").

1  suit in this Court."); *see also Int'l Union of Operating Eng'rs, Loc. 39*, 151 Cal. App. 4th at 949

2  ("[The Public Employment Relations Board] has asserted jurisdiction over this dispute. It issued a

3  complaint against Local 39, a trial had been conducted, and a tentative decision in favor of the

4  City is pending. We conclude the irreparable injury exception does not apply.").

5     The plaintiffs' Meyers-Milias-Brown Act claim is dismissed without prejudice for the failure

6  to exhaust administrative remedies.

7

8                                    **CONCLUSION**

9     The CCSF's motion to dismiss is granted in part and denied in part. Local 261 has

10  organizational standing to assert claims one and two on its own behalf and has associational

11  standing to assert claims for injunctive and declaratory relief on behalf of its members. Local 261

12  does not have associational standing to pursue claims for monetary damages. Local 261's claim

13  under § 1102.5(b) is dismissed with prejudice and its claim under the Meyers-Milias-Brown Act is

14  dismissed with leave to amend.

15     The court does not set a time to amend and will discuss the issue with the parties at the initial

16  case-management conference. If the plaintiffs file an amended complaint, they must attach as an

17  exhibit a blackline of the amended complaint against the current complaint.

18     **IT IS SO ORDERED.**

19     Dated: July 6, 2022

20

21                                    LAUREL BEELER
                                      United States Magistrate Judge
22

23

24

25

26

27

28